UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SALVADOR ONGARO,                                          No. 16-10996-ta13

Debtor.

**<u>MEMORANDUM OPINION</u>**

Before the Court is the narrow issue whether certain debts owed by the Debtor to his ex-wife are in the nature of alimony or support, or alternatively are property division obligations. The issue arises because the latter can be discharged in a chapter 13 case, while the former cannot. The Court concludes that some of the debts fall in each category, as discussed below.

## I.      FINDINGS OF FACT

The Court finds:[1]

Debtor and Beverly Ongaro were married for 31 years. During most of that time they lived in Albuquerque, New Mexico, where both worked. Debtor is 74; Ms. Ongaro is 73. Since 1991 Debtor and Ms. Ongaro have owned a house at 9516 DeVargas Loop, NE in Albuquerque (the "House").[2]

Throughout their marriage Debtor worked as a claims adjuster. He was employed by Keenan and Associates (a third party claims administration company) for many years, earning

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").
[2] The House was titled in Debtor's name only, but there is no dispute that the House is community property, and the mortgages encumbering it are community debts.

about $60,000 a year. Ms. Ongaro taught at a local business college for a number of years, and then got a Realtor's license and sold houses. She estimates that she earned no more than $25,000-$30,000 a year at any time.

Debtor lost his job at Keenan and Associates in August 2011. According to Ms. Ongaro, Debtor was fired because Keenan discovered he was charging for time and/or services he did not actually perform. Debtor agreed to repay Keenan about $52,000 as part of his employment termination. The funds for the repayment came from Debtor's 401k account at Keenan, all of which were community property.

Because of Debtor's job loss, the Ongaros decided to sell the House and move to Parker, Colorado (a Denver suburb), near their daughter and son-in-law. They put the House on the market in 2011, with a list price of $350,000.

To assist in this transition, the Ongaros' daughter bought a townhouse in Parker, Colorado. She planned to lease the townhouse to her parents for about $1,100 per month, half their mortgage payment for the House.

Unfortunately, the House did not sell as the Ongaros expected. They decided that Ms. Ongaro would move into the Parker townhouse, while Debtor stayed in Albuquerque until the House sold. Debtor planned to visit Parker when he could, primarily during holiday weekends. Accordingly, in September 2012 Ms. Ongaro moved, with the family furniture, into the Parker townhouse.

After his wife left town, Debtor rented furniture for the House. He also found a new claims adjuster job in Santa Fe, New Mexico, paying about $70,000 per year. Debtor apparently commuted to Santa Fe and lived in the House.

About a year and a half after moving to Parker, Ms. Ongaro decided to divorce Debtor. She arranged for a process server to serve Debtor with the divorce petition when he visited for the July 4, 2014 weekend. Ms. Ongaro did not inform Debtor of her decision prior to service of the petition.

The divorce, and perhaps the way he learned of it, enraged Debtor. Before he left Parker he told Ms. Ongaro that she would not get a dime from him. He repeated this statement several times thereafter.

Debtor returned to Albuquerque, closed the couple's Wells Fargo bank account, and stopped paying the mortgages on the House.

Debtor retained counsel (apparently only for a short period of time) and appeared in the divorce case. In January 2015, the state court ordered Debtor to begin making monthly maintenance payments to Ms. Ongaro.

In August 2015, two or three days before the parties were due in court to finalize the divorce, Debtor quit his job and cashed out his 401k account ($19,966). Debtor then filed a motion in the state court to modify his maintenance obligation to Ms. Ongaro, since he was no longer employed.

As a result, Ms. Ongaro started working in the tennis pro shop at the Pinery Country Club. The job pays $10.50 an hour. She estimates that she earns about $900-$1,000 a month.

The state court held a final hearing in the divorce case on December 28, 2015. Debtor, by then *pro se*, asked the judge to be allowed to appear at the hearing by telephone. The state court denied the request, and conducted the hearing ex parte. The state court also indicated it would issue a bench warrant for Debtor's arrest unless he paid the amounts owed to Ms. Ongaro.

The state court entered a Final Decree of Dissolution of Marriage (the "Final Decree") and

a Support Order. The pertinent language of the Final Decree is:

> Net property division owed by Respondent to Petitioner: $29,224 payable within 30 days, or at the rate of $500 per month beginning on 1/28/16 until fully paid (1/2 house equity dissipated by Respondent, plus ½ retirement spent by Respondent, minus ½ 2012-2014 taxes to be paid solely by Respondent). Petitioner shall have a judgment for said amount, with interest accruing at the statutory rate.

> Respondent shall pay maintenance to Petitioner of $388 per month, beginning 1/1/16 and continuing until further order of the court. Court modified temporary maintenance to $388 per month, retroactive to 8/16/15. Respondent owes Petitioner $3,583.50 in back maintenance payable within 30 days, or at the rate of $150.00 per month for 24 months, beginning on 1/28/16 until fully paid. Petitioner shall have a judgment for said amount, with interest accruing at the statutory rate.
> …

> The court finds, considering all of the economic circumstances of the parties, and pursuant to C.R.C. 14-10-119 and *In re Marriage of Yates,* 148 P.3d 304 (Colo. App. 2006) that Respondent shall pay to Petitioner the sum of $10,600.00 in attorney's fees. Petitioner shall have a judgment from Respondent in said amount. Respondent shall pay said $10,600.00 in attorney's fees to Petitioner within 30 days, or interest shall begin to accrue on said judgment at the statutory rate. If the entire amount is not paid within 30 days, Respondent shall pay petitioner a minimum of $200 per month, beginning 1/28/16, and continuing on the 28th day of each month thereafter until the entire amount plus interest is fully paid.

A transcript of the December 28, 2015 hearing (the "Transcript") was prepared and entered as a

court order on February 22, 2016. The Transcript contains the following:

> Regarding the permanent orders, pursuant to 14-10-113 and the factors set forth therein, this is a marriage of 31 years. And the Court finds that therefore the marital assets and debt should be substantially equally divided.
> …
> Therefore the Court finds $67,766.00 of marital property went entirely to the Respondent, and that the Petitioner is deserving of one half of the value of that marital property.
> The Court finds that the parties will each keep the debts in his or her own name, and they have stipulated to that. But the Court will require that the Respondent pay the IRS debt of $9,318.
> The Court finds that those are marital debts. The $9,318 is a marital debt, and the Court therefore gives the Respondent a credit from the $67,766 that he owes one half to the Petitioner, he will get a credit of $9,318 in the taxes he is paying on behalf of both parties.

And therefore the net to be divided equally between the parties is $58,448. And that is the net assets of the parties.

The Respondent therefore owes the Petitioner $29,224.00.[3]

…

With respect to maintenance, the Court finds that the Petitioner lacks sufficient property to be self-supporting at this time.

That the Respondent, based on his most recent sworn financial statement, and based on the credible testimony of the Petitioner, has the ability as this time to pay maintenance to the Petitioner.

And the Court finds the $338 per month that the Petitioner is requesting is appropriate and equitable pursuant to all of the factors set forth under 14-10-114 and the guidelines . . .[4]

At the time of the final hearing, Debtor's monthly income was about $2,200 (from social security), while Ms. Ongaro's was about $2,000 ($1,038 from social security and $900-$1,000 from the Pinery Country Club).

Debtor filed this bankruptcy case on April 22, 2016. His only real property is the House, which apparently has no equity and is in foreclosure. According to his bankruptcy schedules, Debtor owns less than $7,500 of unencumbered personal property. Debtor is not a wealthy man. For her part, Ms. Ongaro is also struggling financially, must work a low-paying job, and has significant health problems. Her financial situation is precarious and likely will not improve. Financially, the divorce has not been kind to either party.

Actuarial tables available on the web place current life expectancy of United States males between 76.7 years and 78.5 years, depending on a number of variables. The Court takes judicial notice of such tables, in consideration of the parties' financial situations and the amount of money they were able to expend on the claim.

---

[3] Transcript, pp. 2-4.
[4] Transcript, p. 6.

## II.    Discussion

The issue before the Court is whether Debtor's obligations to his ex-wife are § 523(a)(5)[5] alimony/support obligations or § 523(a)(15) property settlement obligations. Section 523(a) provides in part:

> (a) A discharge under section … 1328(b) of this title does not discharge an individual debtor from any debt—
> …
>> (5) for a domestic support obligation;
> …
>> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the court of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

Section 101(14a) defines a "domestic support obligation" as

> a debt that accrues before, on, or after the date of the order for relief in a title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>> (A) owed to or recoverable by—
>>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative;
> …
>> (B) in the nature of alimony, maintenance, or support … of each spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>> (C) established ... by reason of applicable provisions of—...
>>> (ii) an order of a court or record; ...

Finally, § 1328(a) allows a Chapter 13 debtor to discharge § 523(a)(15) debts if he or she makes all required payments under a confirmed Chapter 13 plan and otherwise complies with the section. There is no similar provision for § 523(a)(5) debts. Thus, in Chapter 13 cases it is critical to determine whether amounts owed to former spouses come within (a)(5) or (a)(15).

---

[5] Unless otherwise noted, all statutory references are to 11 U.S.C.

A.    Tenth Circuit Case Law on Whether a Divorce Debt is § 523(a)(5) or (a)(15).

Whether a given debt is in the nature of alimony, maintenance, or support is an issue of federal law. *Young v. Young* (*In re Young*), 35 F.3d 499, 500 (10th Cir. 1994). Although federal law controls, state law "provide[s] guidance in determining whether the obligation should be considered 'support' under § 523(a)(5)." *Cummings v. Cummings,* 244 F.3d 1263 (11th Cir. 2001), citing *In re Strickland,* 90 F.3d 444, 446 (11th Cir. 1996).

"In determining whether an obligation is in the nature of support, the Court must not rely on labels the parties or the state court give to an obligation." *Brown v. Brown* (*In re Brown*), 2013 WL 5376541, *5 (Bankr. D.N.M.). Courts should undertake a two-pronged analysis "into both the parties' intent and the substance of the obligation." *Crum v. Howe* (*In re Howe*), 2007 WL 2509021 (Bankr. D.N.M.), citing *Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717 (10th Cir. 1993). If the obligation stems from an agreement, the agreement is "persuasive evidence of intent." *In re Yeates*, 807 F.2d 874 (10th Cir. 1986). If the operative document is a court order, the bankruptcy courts should attempt to glean the intent of the state court, including the state court's characterization of an obligation from one former spouse to another. *In re Phillips*, 520 B.R. 853, 859 (Bankr. D.N.M. 2014); *Freeman v. Loomas (In re Loomas)*, 2013 WL 74477, *3 (Bankr. D. Colo.) (considering the divorce court's characterization). *See also Morel v. Morel (In re Morel),* 983 F.2d 104, 105 n. 3 (8th Cir. 1992) (in a contested divorce proceeding, the bankruptcy court must examine the intent of the state court); and *In re Andrews*, 434 B.R. 541, 549 (Bankr. W.D. Ark. 2010) (to the same effect).

Beyond these considerations, the bankruptcy court ultimately must make its own determination about the nature of the obligation. *See Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994) (because federal and state law differ on these issues, collateral estoppel

does not apply and the bankruptcy court should not consider itself bound to the state court's characterization). As the Tenth Circuit explained:

> [A] bankruptcy court must look beyond the language of the decree to the intent of the parties and the substance of the obligation to determine whether the obligation is actually in the nature of alimony, maintenance or support ... Congress, by directing federal courts to determine whether an obligation is actually in the nature of alimony, maintenance, or support sought to ensure that § 523(a)(5)'s underlying policy is not undermined either by the treatment of the obligation under state law or by the label which the parties attach to the obligation.

*Sampson,* 997 F.2d at 722–23 (citations omitted). *See also Cline v. Cline*, 259 Fed. App'x 127, 129 (10th Cir. 2007) (quoting and following *Sampson*).

Relevant factors used by the Third Circuit include: the language and substance of the agreement in the context of surrounding circumstances; the parties' financial circumstances at the time of the settlement; and the function served by the obligation at the time of the divorce or settlement. *In re Gianakas*, 917 F.2d 759, 762-63 (3d Cir. 1990). These factors are helpful to the Court's ultimate determine regardless of whether the divorce decree giving rise to the obligation results from litigation or a stipulation.

B.     The Monthly Maintenance Obligation is a § 523(a)(5) Debt.

It is not difficult to conclude that Debtor's obligation to pay Ms. Ongaro monthly maintenance (including any maintenance owed but not paid) is an (a)(5) support obligation. The state court characterized the obligation as "maintenance," and the judge's statements in the Transcript leave no doubt that the monthly maintenance payments she ordered are for alimony, maintenance, and/or support.

The Court finds and concludes that all of Debtor's monthly maintenance payment obligations accruing on or after January 1, 2015 come within § 523(a)(5).

C.    The $29,244 Debt Comes Within § 523(a)(15).

Debtor also owes Ms. Ongaro $29,244 (the "Equalization Payment") because certain marital property went entirely to Debtor, not her.  Based on the facts in the record, the Final Decree, and the Transcript, the Court finds and concludes that the Equalization Payment is an (a)(15), not an (a)(5), debt.

Nothing in the divorce documents makes it appear that the state court intended the Equalization Payment as maintenance or support.  The Final Decree describes the debt as the "net property division," in clear contrast to the monthly "maintenance" ordered by the court.  In the Transcript the state court described the Equalization Payment as "one half of the value of marital property," and one half of "the net assets of the parties."  The court elsewhere stated that "an equal division of marital assets and debts" is "equitable." And that "the marital assets and debt should be substantially equally divided."

The facts giving rise to the Equalization Payment also show it was not meant to be a support obligation.  The parties' gross income was roughly equivalent, and Ms. Ongaro's net income exceeded Debtor's when accounting for his support obligations.  It does not seem likely that, given the parties' income, the state court viewed the Equalization Payment as additional support. Further, the state court ordered the Equalization Payment to compensate Ms. Ongaro for Debtor taking all of the 401k money from the Santa Fe employer ($19,966), and for Debtor allegedly dissipating $48,000 in equity in the House.   Ms. Ongaro herself seemed believe that the Equalization Payment was meant to compensate for Debtor's dissipation of the marital property; she testified that Debtor was ordered to continue making mortgage payments flouted the order. The Equalization Payment also reflects the state court's order that Debtor pay all of a $9,318 community tax debt.

The intent of the state court and the parties, the substance of the debt, and the circumstances all indicate that the Equalization Payment is in the nature of property division rather than alimony, maintenance, or support.

D.    The Attorney Fee Debt is Partially a § 523(a)(15) Debt.

The Court concludes that a portion of the attorney fee award is in the nature of alimony, maintenance, and support, because the attorney fees were incurred by Ms. Ongaro in part to obtain the $388 monthly maintenance award.  *See Jones v. Jones (In re Jones)*, 9 F.3d 878, 881 (10th Cir. 1993) (court-ordered attorney fees arising from post-divorce custody actions are (a)(5) debts); *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 447 (11th Cir. 1996) (award of attorney fees made in connection with debtor attempt to modify child custody and support obligations was an (a)(5) debt).  Under the circumstances, and given the equities of this particular case, the Court calculated the fees as follows: Assuming Debtor pays $388 in monthly maintenance to Ms. Ongaro for eight years[6] from January 1, 2015, the total payments would be $37,248.  This figure, added to the property settlement amount of $29,244, totals $66,492.  $37,248 is 56% of $66,492, so the Court finds and concludes that 56% of the $10,600 attorney fee award (i.e. $5,936) is in the nature of alimony, maintenance, and support.  The balance ($4,664) comes within § 523(a)(15) but not (a)(5).

---

[6] The Court selected this number of years based on an estimate of Debtor's life expectancy.  Under Colorado law, the minimum number of years of maintenance for a marriage of the Ongaros' duration would be ten.  *See* C.R.S.A. § 14-10-114.  However, ten years from January 1, 2015, Debtor would be almost 83 years old.  The Court hopes the Debtor is alive and healthy on January 1, 2025, but decided that an eight year estimate (when Debtor will be nearly 81) was more in keeping with available actuarial tables.

-10-

### III.    Conclusion

Debtor's past due, current, and future monthly maintenance obligation to Ms. Ongaro, together with $5,936 of the attorney fee debt, are § 523(a)(5) obligations. The Equalization Payment obligation and the balance of the attorney fee debt are not (a)(5) obligations, but come within § 523(a)(15). A separate order will be entered.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: August 26, 2016

Copies to:

Michael Daniels
P.O. Box 1640
Albuquerque, NM 87103

Michael Lash
3900 Juan Tabo, NE
Albuquerque, NM 87111

Kelley Skehen
625 Silver, Ave SW, #350
Albuquerque, NM 87102